**UNITED STATES DISTRICT COURT**
**DISTRICT OF SOUTH CAROLINA**
**CHARLESTON DIVISION**

| | |
|---|---|
| **DEREK JOHN LAZAR,** | **Case No.:**   2:26-cv-2163-RMG |
| **Plaintiff,** | |
| **v.** | **COMPLAINT**<br>**(Jury trial demanded)** |
| **ANDREA LYNN LAZAR AND THE BANK OF SOUTH CAROLINA,** | |
| **Defendants.** | |

**COMES NOW** Plaintiff Derek John Lazar ("Derek"), by and through his undersigned counsel, and brings this action against Defendants Andrea Lynn Lazar ("Andi") and The Bank of South Carolina (the "Bank"), and states as follows:

**NATURE OF THE ACTION**

1.      This action arises as a result of Andi's unauthorized removal of funds, in July 2025, from an account at the Bank that was jointly owned by Derek and his mother, Mary Clay Pringle Lazar ("Mary"), who passed away within weeks of Andi's unauthorized withdrawal of funds. The funds would have remained in the joint account and passed to Derek as the surviving joint owner upon Mary's death on July 31, 2025, but for Andi's unauthorized removal of the funds. The Bank is also liable to Derek because the Bank acted, at a minimum, negligently in permitting Andi to remove the funds from the joint account when the Bank had actual notice that Andi lacked the authority to remove the funds.

2.      This is an action to recover damages through claims for conversion, intentional interference with inheritance, unjust enrichment, violation of S.C. Code Ann. § 62-8-117, negligence, and negligence per se.

1

## PARTIES, JURISDICTION, AND VENUE

3.　　Derek is a citizen and resident of Dallas County, Texas.

4.　　Andi is, upon information and belief, a citizen and resident of North Carolina.

5.　　The Bank is a corporation incorporated and existing under the laws of the State of South Carolina, with its principal place of business in Charleston County, South Carolina, and which regularly conducts business in Charleston County, South Carolina.

6.　　This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1332, as there is complete diversity between Derek and Defendants, and the amount at issue exceeds $75,000.00.

7.　　Pursuant to the South Carolina long-arm statute, S.C. Code § 36-2-803, "[a] court may exercise personal jurisdiction over a person who acts directly or by an agent as to a cause of action arising from the person's … (1) transacting any business in this State . . . [or] (3) commission of a tortious act in whole or in part in this State.

8.　　Personal jurisdiction over Defendants is proper because Derek's claims arise from and relate to acts or omissions that occurred in the State of South Carolina.

9.　　Pursuant to 28 U.S.C. § 1391(b), venue is proper in this Court because a substantial part of the events or omissions giving rise to the claim occurred in South Carolina.

10.　　Pursuant to Local Civil Rule 3.01, venue in this Division is proper because a substantial part of the events or omissions giving rise to the claim occurred in this Division, and because the Bank does business relating to the events or omissions alleged in this Division.

2

## FACTUAL ALLEGATIONS

**A. Mary Lazar's Power of Attorney and Joint Bank Account**

11.     Mary was the mother of Derek, Andi, and their brother, Nikolai. Mary passed away on July 31, 2025.

12.     On September 19, 2019, Mary executed a Springing General Durable Power of Attorney (the "POA"), recorded in the Charleston County Register of Deeds Office at Book 0826, Page 403. The POA named Derek and Andi as Co-Agents.

13.     The POA expressly states that "[u]nanimity is required when there are two or fewer Agents so serving." Accordingly, neither Derek nor Andi could lawfully exercise any power under the POA without the other's consent while both were serving as Co-Agents.

14.     The POA is a springing power of attorney. It "becomes effective upon and continues in effect in the event of and during [Mary's] physical disability or mental incompetence." The POA incorporates the definition of "physical disability or mental incompetence" set forth in S.C. Code Ann. § 62-8-102(5), and Article VI, Section 5(a)(3) of the POA provides in relevant part that Mary's incapacity shall be deemed to exist upon "presentation to [the] Agent of a certificate executed by two licensed physicians, each stating that [Mary] is physically or mentally impaired or disabled to the extent that [she] lack[s] sufficient understanding or capacity to make or communicate responsible decisions concerning [her] property and of executing documents in connection herewith."

15.     At all times material hereto, Derek was a joint owner on an account at the Bank (account ending in -8521) (the "Bank Account"). On August 1, 2019, Mary signed an Account Agreement establishing the Bank Account as a "Multi-Party Account with Right of Survivorship" and naming Derek as a joint owner on the account. Under S.C. Code Ann. § 62-6-202(a), as the

3

surviving joint owner of a multiple-party account with right of survivorship, Derek was entitled to the funds on deposit in the Bank Account at Mary's death.

16.     Mary is also the settlor of the Mary C. Lazar Living Trust (the "Trust"), and Derek, Andi, and Nikolai are the beneficiaries of the Trust.

**B. Mary's Incapacity**

17.     Upon information and belief, on June 23, 2025, two physicians—Dr. Robert A. Craven and Dr. Andrew McMarlin of Ashley River Healthcare—executed a Capacity Statement for Mary. The Capacity Statement addressed only Mary's ability to make healthcare decisions and therefore did not purport to satisfy, and did not satisfy, the two-physician certificate required under Article VI, Section 5(a)(3) of the POA to trigger the POA's effectiveness. In any event, this Capacity Statement was never presented to Derek, who was co-agent under the POA, and therefore could not have satisfied Section V(a)(3) of the POA.

18.     Apparently recognizing the inadequacy of the June 23, 2025 Capacity Statement for purposes of the POA, Andi obtained a separate letter dated July 18, 2025 from Dr. William H. Snyder III and Dr. H. Edward Thompson, stating that Mary was mentally incompetent to make financial and healthcare decisions (the "July 18 Incapacity Letter").

**C.  Andi's Unauthorized and Unilateral Transfers**

19.     On July 17, 2025—the day before the July 18 Incapacity Letter was issued—Andi signed a check drawn on the Bank Account in the amount of $150,000, made payable to Mary. Andi signed the check as "POA for Mary Clay Lazar." At the time Andi signed this check, the POA had not yet been triggered pursuant to its terms, as the required physician certificate had not yet been executed or presented to Andi and Derek as agents. Moreover, even if the POA had been

effective at that time, Andi was required to obtain Derek's consent before taking any action under it, which she did not do.

20.     On July 18, 2025, the $150,000 check drawn by Andi was deposited into a Truist Bank account (ending in -5061) titled in the name of Mary Clay Lazar. At the time of the deposit, that account had a balance of $80,635.00, bringing the total balance to $224,223.00 following the deposit.

21.     By drawing the $150,000 check and causing those funds to be transferred out of the Bank Account, Andi unilaterally and without Derek's consent removed funds in which Derek had a vested survivorship interest. But for Andi's unauthorized transfer, those funds would have remained in the Bank Account and passed to Derek as the surviving joint owner upon Mary's death.

22.     On July 25, 2025, Andi caused an outgoing wire transfer of $7,500.00, plus a $25.00 wire fee, to be processed from the Bank Account to Moore & Van Allen PLLC, a law firm that, upon information and belief, Andi had retained to represent her in connection with matters relating to Mary's estate and finances. Derek was not aware of and did not consent to this wire transfer. The $7,500.00 wire was used to pay for legal services rendered to Andi, not to Mary, and constituted the use of Mary's assets—in which Derek had a survivorship interest—to discharge Andi's own legal obligations, in direct violation of Article 1, paragraph 23 of the POA, which expressly prohibited agents from using the principal's assets to discharge any legal obligation of the agent.

23.     At the time of Mary's death on July 31, 2025, the balance of the Bank Account had been reduced from approximately $154,511.88 (as of June 26, 2025) to $14,917.84 as a result of, among other things, the $150,000 transfer and the $7,525.00 wire and wire fee orchestrated by

Andi. As a result of Andi's unauthorized actions, the aggregate amount of $157,525.00 that should have remained in the Bank Account and passed to Derek as the surviving joint owner upon Mary's death was not in the account at the time of Mary's death.

24.     On March 3, 2026, the Truist account ending in -5061 was closed with a balance of $224,234.00. Those funds, which included the $150,000 that Andi had unilaterally transferred out of the Bank Account, were transferred to an estate account. Andi and Nikolai are beneficiaries of the Trust and benefit from the assets held in the Trust and the estate.

25.     Andi claimed that she removed the $150,000 from the Bank Account so that those funds could be used on behalf of Mary, but Andi did not, in fact, remove the funds for this purpose, as demonstrated by, among other things, the fact that the funds were already in an account co-owned by Mary, and the fact that the funds were never used on behalf of Mary, and the fact that the Truist Account into which Andi placed the funds already had a balance of over $80,000.00, which was enough to provide for Mary's expenses. Upon information and belief, Andi removed the funds for the purpose of increasing her interest in Mary's Trust.

26.     Regardless of Andi's intent, she lacked authority to remove the funds from the Bank Account.

**D.     The Bank's Failure to Require Proper Authorization**

27.     The Bank honored the $150,000 check signed by Andi on July 17, 2025, on which Andi purported to act "as POA for Mary Clay Lazar," without verifying that the POA had actually become effective—that is, without verifying that the required two-physician certificate had been presented to the agent as required under the POA's own terms. At the time the check was honored, the POA had not sprung into effect under its own terms.

6

28.    The Bank also permitted Andi to exercise POA authority over the Bank Account without requiring Derek's co-authorization as required by the POA's express unanimity provision.

29.    Under S.C. Code Ann. § 62-8-119, a financial institution that acts in good faith reliance on a power of attorney is protected from liability, but that protection is conditioned on the institution lacking actual knowledge of facts that would make the purported exercise of authority unauthorized. The Bank had actual knowledge, from its own account records, that Derek was a co-owner of the Bank Account and that any POA-based action affecting that account required both Co-Agents' consent. The Bank also had constructive knowledge, from the face of the POA itself (which, upon information and belief, Andi presented to the Bank), that the POA was a springing instrument that could only become effective upon presentation of a two-physician certificate to the agents. The Bank failed to take reasonable steps to verify that these preconditions were satisfied before honoring Andi's transactions.

### E.    Andi's Refusal to Return the Funds

30.    On April 14, 2026, Derek demanded in writing that Andi pay him $157,525.00, representing the funds that Andi wrongfully caused to be transferred out of the Bank Account prior to Mary's death.

31.    On April 30, 2026, Andi declined in writing to return any of the funds. Andi has not returned any portion of the funds wrongfully transferred.

**FOR A FIRST CAUSE OF ACTION**
**(Conversion — Against Defendant Andi Lazar)**

32.    Derek incorporates by reference the allegations in the above paragraphs as if fully set forth herein.

7

33.     As the surviving joint owner of the Bank Account, a multiple-party account with right of survivorship under S.C. Code Ann. § 62-6-202(a), Derek had a vested property interest in the funds on deposit in the Bank Account.

34.     Andi intentionally exercised dominion and control over the funds in the Bank Account by (a) drawing a check for $150,000 without Derek's consent and without the POA having become effective under its own terms, and (b) wiring $7,500 to her own attorneys from the Bank Account without Derek's consent, totaling $157,525.00.

35.     Andi's unauthorized exercise of dominion and control over these funds was inconsistent with, in derogation of, and to the exclusion of Derek's property rights as joint owner of the Bank Account, depriving Derek of $157,525.00 that would have passed to him as the surviving joint owner upon Mary's death.

36.     As a direct and proximate result of Andi's conversion, Derek has suffered damages in the amount of $157,525.00, plus pre-judgment and post-judgment interest.

37.     Andi's conduct was willful, wanton, and in reckless disregard of Derek's rights, entitling Derek to an award of punitive damages.

38.     Derek seeks recovery from Andi of actual damages, punitive damages, pre-judgment interest, post-judgment interest, and such other relief as the Court deems just and proper.

### FOR A SECOND CAUSE OF ACTION
#### (Intentional Interference with Inheritance — Against Defendant Andi Lazar)

39.     Derek incorporates by reference the allegations in the above paragraphs as if fully set forth herein.

40.     At all relevant times, Derek had a reasonable expectation of inheriting the funds on deposit in the Bank Account at the time of Mary's death, by virtue of his status as the surviving

joint owner of a multiple-party account with right of survivorship under S.C. Code Ann. § 62-6-202(a).

41.     Andi intentionally interfered with Derek's expectancy of inheritance through tortious conduct, including her unauthorized exercise of the POA before it had sprung into effect, her unilateral transfer of $150,000 out of the Bank Account without Derek's consent, and her wire of $7,500 to her own attorneys from the Bank Account without Derek's consent, all in violation of the POA's express requirements and in violation of her fiduciary duties as agent under the South Carolina Uniform Power of Attorney Act, S.C. Code Ann. §§ 62-8-101 *et seq.*

42.     But for Andi's tortious conduct, it is reasonably certain that the $157,525.00 that Andi caused to be removed from the Bank Account would have remained in that account and passed to Derek as the surviving joint owner upon Mary's death.

43.     Derek lacks an adequate remedy at probate.

44.     Andi's conduct was willful, wanton, and in reckless disregard of Derek's rights, entitling Derek to an award of punitive damages.

45.     Derek seeks recovery from Andi of actual damages, punitive damages, pre-judgment interest, post-judgment interest, and such other relief as the Court deems just and proper.

**FOR A THIRD CAUSE OF ACTION**
**(Unjust Enrichment — Against Defendant Andi Lazar)**

46.     Derek incorporates by reference the allegations in the above paragraphs as if fully set forth herein.

47.     By causing the transfer of $150,000 from the Bank Account to the Truist account and wiring $7,500 to her own attorneys, Andi conferred upon herself, and caused Derek and Mary as joint owners of the Bank Account to confer upon Andi, a benefit at Derek's expense—

9

specifically, the benefit of controlling, directing, and personally using funds in which Derek held a vested survivorship interest.

48.    Andi knew, or reasonably should have known, of the benefit she received, including that the funds at issue were subject to Derek's survivorship interest and that she was not authorized to transfer them unilaterally.

49.    Andi's retention of the benefit conferred—namely, the value of the $157,525.00 in funds she caused to be diverted from the Bank Account—would be inequitable and unjust under the circumstances, as those funds rightfully belonged to Derek upon Mary's death.

50.    Derek is entitled to restitution from Andi in the amount of $157,525.00, plus pre-judgment interest, post-judgment interest, and such other relief as the Court deems just and proper.

**FOR A FOURTH CAUSE OF ACTION**
**(Violation of S.C. Code Ann. § 62-8-117 — Against Defendant Andi Lazar)**

51.    Derek incorporates by reference the allegations in the above paragraphs as if fully set forth herein.

52.    S.C. Code Ann. § 62-8-117 provides that an agent who violates Article 8 of the South Carolina Probate Code is liable to the principal or the principal's successors in interest for the amount required to: (1) restore the value of the principal's property to what it would have been had the violation not occurred; and (2) reimburse the principal or the principal's successors in interest for the attorney's fees and costs paid on the agent's behalf.

53.    Andi is an "agent" within the meaning of S.C. Code Ann. § 62-8-102(1), having been named as a Co-Agent under the POA.

54.    Andi violated Article 8 of the South Carolina Probate Code—including S.C. Code Ann. § 62-8-114—by, among other things: (a) exercising authority under the POA before it had sprung into effect pursuant to its own terms; (b) acting without the unanimity required by the POA

and by S.C. Code Ann. § 62-8-111(a), which provides that co-agents must act unanimously unless the power of attorney otherwise provides; (c) failing to act in good faith and in accordance with Mary's reasonable expectations; (d) failing to act loyally for Mary's benefit; (e) using Mary's property to benefit herself by directing $7,500 of Mary's funds to pay her own attorneys; and (f) generally failing to act in accordance with her fiduciary obligations as agent.

55.    Derek is a "successor in interest" of Mary within the meaning of S.C. Code Ann. § 62-8-117. Derek is a joint owner of the Bank Account with right of survivorship under S.C. Code Ann. § 62-6-202(a), and his survivorship interest in the funds on deposit in that account constitutes a property interest that was directly and adversely affected by Andi's violations of S.C. Code Ann. § 62-8-114. Also, Derek is a beneficiary of the Mary C. Lazar Living Trust and, as such, is a successor in interest to Mary with respect to her trust assets

56.    As a direct and proximate result of Andi's violations of S.C. Code Ann. § 62-8-114, Derek has suffered damages in the amount of $157,525.00 — the value of the property that would have remained in the Bank Account and passed to Derek but for Andi's unauthorized conduct.

57.    Pursuant to S.C. Code Ann. § 62-8-117(2), Derek is entitled to reimbursement of the attorney's fees and costs he has incurred and will incur in bringing this action.

58.    Derek seeks recovery from Andi of the amount required to restore the value of the property wrongfully diverted, reimbursement of attorney's fees and costs pursuant to S.C. Code Ann. § 62-8-117(2), pre-judgment interest, post-judgment interest, and such other relief as the Court deems just and proper.

**FOR A FIFTH CAUSE OF ACTION**
**(Negligence — Against Defendant The Bank of South Carolina)**

11

59.     Derek incorporates by reference the allegations in the above paragraphs as if fully set forth herein.

60.     As the financial institution holding the Bank Account, the Bank owed a duty of care to Derek as a joint owner of that account. That duty included the obligation to refrain from honoring transactions purportedly made under a power of attorney when the Bank had actual or constructive knowledge of facts that rendered the purported exercise of authority unauthorized.

61.     The Bank breached this duty by honoring: (a) the $150,000 check drawn by Andi on July 17, 2025, purportedly as POA for Mary, without verifying that the POA had become effective under its own terms (i.e., that the required two-physician certificate had been presented to the agent), and without obtaining Derek's consent as required by the POA's express unanimity provision; and (b) the $7,500 wire transfer to Moore & Van Allen PLLC on July 25, 2025, without Derek's consent.

62.     The Bank had actual and constructive knowledge, from its own account records, that the Bank Account was a multi-party account with right of survivorship jointly owned by Mary and Derek, and that any transaction affecting that account pursuant to a power of attorney would require both Co-Agents' consent under the unanimity provision of the POA.

63.     The Bank had actual and constructive knowledge, from the face of the POA itself, that the POA was a springing instrument that only became effective upon presentation of a two-physician certificate. By accepting Andi's representation that she was acting as POA without verifying that the triggering conditions had been satisfied, the Bank failed to exercise the reasonable care that a financial institution owes to joint account holders.

64.     As a direct and proximate result of the Bank's negligence, Derek was deprived of $157,525.00 that would have remained in the Bank Account and passed to him as the surviving

12

joint owner upon Mary's death. Derek has suffered damages in the amount of $157,525.00, plus pre-judgment and post-judgment interest.

65.    Derek seeks recovery from the Bank of actual damages, pre-judgment interest, post-judgment interest, and such other relief as the Court deems just and proper.

## FOR A SIXTH CAUSE OF ACTION
### (Negligence Per Se — Against Defendant The Bank of South Carolina)

66.    Derek incorporates by reference the allegations in the above paragraphs as if fully set forth herein.

67.    S.C. Code Ann. § 62-8-119 governs the circumstances under which a financial institution may rely on a power of attorney. Under that statute, a financial institution that honors a transaction made by a person purporting to act as agent under a power of attorney is protected from liability only if the institution acts in good faith and without actual notice that (a) the power of attorney is void, invalid, or terminated; (b) the purported agent's authority is void, invalid, or terminated; or (c) the agent is breaching a fiduciary duty to the principal.

68.    At the time the Bank honored Andi's $150,000 check and $7,500 wire, the Bank had actual notice of facts removing the Bank from the safe harbor provisions of S.C. Code Ann. § 62-8-119. The Bank knew from its own records that Derek was a co-owner of the Bank Account and that the POA required both Co-Agents to act unanimously. The Bank knew from the face of the POA that the instrument was springing and would only become effective upon satisfaction of a two-physician certificate condition. The Bank therefore had actual notice that Andi's purported exercise of POA authority was unauthorized and constituted a breach of her fiduciary duty to Mary.

69.    By honoring the unauthorized transactions notwithstanding this actual notice, the Bank violated S.C. Code Ann. § 62-8-119 and acted outside the scope of the safe harbor that statute provides.

13

70.     S.C. Code Ann. § 62-8-119 was enacted for the purpose of protecting principals and their property interests, as well as the interests of joint account holders and others with property rights in accounts subject to powers of attorney. Derek, as a joint account holder, is a member of the class of persons that this statute was designed to protect.

71.     The Bank's violation of S.C. Code Ann. § 62-8-119 constitutes negligence per se.

72.     As a direct and proximate result of the Bank's negligence per se, Derek was deprived of $157,525.00 that would have remained in the Bank Account and passed to him as the surviving joint owner upon Mary's death.

73.     Derek seeks recovery from the Bank of actual damages, pre-judgment interest, post-judgment interest, and such other relief as the Court deems just and proper.

WHEREFORE, Derek respectfully requests that this Court enter judgment in his favor against Defendants and award Plaintiff the following relief:

i.      Enter judgment for all damages to which Derek is entitled under applicable law, including without limitation actual, consequential, special, and punitive damages;

ii.     Award Derek his attorney's fees and costs pursuant to S.C. Code Ann. § 62-8-117;

iii.    Award Plaintiff pre-judgment and post-judgment interest; and

iv.     Grant such other relief as the Court deems just and proper.

*[signature block on following page]*

14

s/ Patrick C. Wooten
Patrick Wooten (SC Bar No. 77985)
DUFFY & YOUNG, LLC
96 Broad Street
Charleston, South Carolina 29401
(843) 720-2044 (phone)
(843) 720-2047 (fax)
pwooten@duffyandyoung.com

*Attorney for Plaintiff*

June 2, 2026
Charleston, South Carolina

15